# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

### No. ACM 40500

———————————

### UNITED STATES
*Appellee*

**v.**

### William M. HILTON
Lieutenant Colonel (O-5), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 4 April 2025

———————————

*Military Judge*: Sterling C. Pendleton.

*Sentence*: Sentence adjudged 24 March 2023 by GCM convened at Ramstein Air Base, Germany. Sentence entered by military judge on 13 July 2023: Dismissal, confinement for 40 months, and a reprimand.

*For Appellant*: Captain Michael J. Bruzik, USAF; Sean F. Mangan, Esquire; Frank J. Spinner, Esquire.

*For Appellee*: Colonel Steven R. Kaufman, USAF; Colonel Matthew D. Talcott, USAF; Lieutenant Colonel Thomas J. Alford, USAF; Lieutenant Colonel J. Peter Ferrell, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Major Kate E. Lee, USAF; Major Brittany M. Speirs, USAF; Major Jocelyn Q. Wright, USAF; Mary Ellen Payne, Esquire.

Before JOHNSON, RICHARDSON, and MASON, *Appellate Military Judges*.

Judge MASON delivered the opinion of the court, in which Chief Judge JOHNSON and Senior Judge RICHARDSON joined.

———————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

———————————

MASON, Judge:

The military judge found Appellant guilty, in accordance with his pleas, of one specification of being drunk on duty, in violation of Article 112, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912, one specification of unlawful entry, in violation of Article 129, UCMJ, 10 U.S.C. § 929, and three specifications of conduct unbecoming an officer and gentleman, two by exceptions, in violation of Article 133, UCMJ, 10 U.S.C. § 933.[1] Contrary to his pleas, a general court-martial composed of members convicted Appellant of the excepted language of one of the conduct unbecoming specifications as well as one specification of sexual assault, in violation of Article 120, UCMJ, 10 U.S.C. § 920.[2] The military judge sentenced Appellant to a dismissal, confinement for 40 months, and a reprimand. Appellant requested the automatic forfeitures of pay and allowances be waived while he was in confinement. The convening authority took no action on the findings or sentence and denied the request to waive the automatic forfeitures.

Appellant raises four issues on appeal which we have consolidated: (1) whether the military judge erred by failing to grant relief under Rule for Courts-Martial (R.C.M.) 707 or Article 10, UCMJ, 10 U.S.C. § 810, for speedy trial violations; (2) whether the findings of guilty for sexual assault and the excepted language of conduct unbecoming are legally and factually sufficient; (3) whether the military judge erred by denying the defense request pursuant to Mil. R. Evid. 615 to exclude the alleged victim from the courtroom during the testimony of her daughter, also an alleged victim but of a separate offense; and (4) whether the military judge's instruction on how to consider evidence admitted over defense objection pursuant to Mil. R. Evid. 413 was contrary to established law.[3]

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ), the Rules for Courts-Martial (R.C.M.), and the Military Rules of Evidence (Mil. R. Evid.) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[2] Appellant was found not guilty of the excepted language of one of the conduct unbecoming specifications; five specifications of abusive sexual contact, in violation of Article 120, UCMJ; two specifications of battery upon a child under the age of 16 and one specification of assault consummated by a battery, in violation of Article 128 UCMJ, 10 U.S.C. § 928; and one specification of unlawful entry and one specification of pandering by inducing, enticing or procuring an act of prostitution, in violation of Article 134, UCMJ, 10 U.S.C. § 934.

[3] Appellant raises issues (3) and (4) in accordance with *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

Additionally, we specified the following issue (5) and ordered briefing from the parties: whether Appellant's plea to conduct unbecoming an officer and gentleman for being drunk in the presence of subordinates was provident.

Also, though not raised as an assignment of error, we consider another issue (6): whether Appellant is entitled to relief for facially unreasonable appellate delay in accordance with *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006), or in the alternative, Article 66(d)(2). UCMJ, 10 U.S.C. § 866(d)(2).

We have carefully considered issues (1), (3), and (4), and find they do not require discussion or relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). Regarding the specified issue (5), we find that Appellant's plea to conduct unbecoming an officer and gentleman for being drunk in the presence of subordinates was not provident. Moreover, we find that we can reassess the sentence and do so below. Regarding the remaining issues, we find no further error that materially prejudiced Appellant's substantial rights. We affirm the remaining findings and sentence, as reassessed.

## I. BACKGROUND

Appellant was a urologist assigned to the medical group at Royal Air Force Lakenheath, United Kingdom, in the summer of 2020. Over the 4th of July weekend, he and other members of the unit, who were neighbors, hosted a series of parties at their respective homes. On 4 July 2020, Appellant was at one of those parties hosted by his friend, an enlisted member of the unit. During that party, Appellant became intoxicated. At his court-martial, Appellant described his speech as "not as crisp" as normal and that his balance was impaired. This incident formed the basis for Appellant's conviction for the Specification 2 of Charge V, conduct unbecoming for being drunk in the presence of subordinates.

The next day, Appellant returned to the same friend's home to hang out with him for about an hour. After that time, he asked where the other people in the house were. The enlisted member stated that they were upstairs. Appellant proceeded upstairs and heard voices coming from one of the rooms. He entered the room and found EL, a civilian, inside lying on a bed and talking to someone on a video call on her phone. EL introduced Appellant to the person she was talking with on the phone. Appellant said, "hello" then turned to EL. He proceeded to lift the blanket covering EL and asked, "Are you naked under here? Do you have clothes on?" He saw that she was clothed and left the room. At the time of these events, Appellant was married, and EL was married to someone else. EL did not consent to Appellant lifting the covers or attempting to view her naked body. This incident formed the basis for Appellant's convictions for Specification 1 of Charge V, conduct unbecoming involving EL.

On 28 August 2020, Appellant and his wife, DM, visited London. Before departing, they arranged for MH to watch their dogs. MH was the 20-year-old daughter of JR, Appellant's operating room nurse. Before leaving for London, Appellant picked up MH around 1100 hours and drove her back to his house. About 30 minutes later, Appellant and DM left. They returned from their London trip at approximately 0300 the next morning. Because both Appellant and his wife were intoxicated, MH, who did not drive, stayed in Appellant's guest room. The next morning, around 0930 hours, MH awoke and went to a living area downstairs. While she sat on the couch looking at her phone, Appellant came into the room. Appellant and she talked, and the conversation turned sexual. Appellant asked if MH was seeing a particular person, and MH replied that she and that person were friends. Appellant responded, "Good because I've always been jealous because even talking to you and thinking about you gets me hard." This pronouncement made MH uncomfortable. She responded she did not want to talk about that. Appellant asked MH if he could get a hug. She responded that she did not believe that was a good idea. Appellant stated, "Come on, it's just a hug." Appellant approached MH and started kissing and sucking on her neck. He then hugged her, continued his kissing, and pushed her onto her back, pinning her on the couch. MH told Appellant "No," but he continued.

After several seconds, Appellant stood up and ordered MH to remove her clothes. MH did not comply at first, but Appellant raised his voice and sternly demanded that she remove her clothes. MH described Appellant's face showing "the most terrifying look [she had] ever seen." In response to his commands and demeanor, MH removed her clothes. Appellant pushed her back down on the couch where he proceeded to penetrate MH's vagina with his tongue. About 15 minutes later, Appellant heard his wife coming down the stairs. He stopped penetrating MH, stood up, and grabbed MH's clothes and threw them at her. He told her to get dressed. DM saw them and asked, "What's going on here?" Appellant responded, "F**king." Appellant's wife became enraged. The two began yelling at each other while MH dressed. After Appellant left the room, DM turned to MH, told her to grab her stuff, and informed MH that she would drive her home. During the ride, MH told DM that Appellant came onto her, that he forced himself onto her and that she did not know what to do. Appellant's wife told MH that she needed to learn how to say "No." This incident formed the basis for Appellant's convictions for Specification 6 of Charge II and Specification 5 of Charge V, sexual assault of MH and conduct unbecoming.

The next day, Appellant went to MH's family's home. The front door was unlocked so, without knocking, he entered the home. Appellant was not invited, did not have permission to enter the home, and knew that he did not have permission to enter the home, but he entered anyway. He saw MH standing at the kitchen counter. He approached her to give her the money for

watching the dogs. The two had a brief conversation.[4] Appellant then left. This incident formed the basis for Appellant's conviction for Specification 2 of Charge IV, unlawful entry.

On 3 October 2020, Appellant's wife hosted a girls' night out at Appellant's and her home. Several members of Appellant's unit attended. During that evening, while also at the home, Appellant drank to excess and became drunk. He was in the living room while the gathered individuals were in the dining room. Appellant would go into the living room occasionally and they would see him. This incident formed the basis for the rest of Appellant's conviction for Specification 2 of Charge V, conduct unbecoming, noted *supra*.

On 1 December 2021, Appellant, having been reassigned to the chapel as a special projects manager, reported for work for a staff meeting. Subsequent to the meeting, he was sent home to telework, where he had lunch with his wife and consumed alcohol. After lunch, Appellant's first sergeant contacted Appellant and informed him that he needed to come in to sign some legal paperwork. Appellant knew he had been drinking and did not think he should drive. He advised the first sergeant of that fact and that he would have his wife drive him. Upon arrival, Appellant signed the legal paperwork and was ordered to provide blood for testing. The test revealed that Appellant had a 0.138 blood alcohol content. This incident formed the basis for Appellant's conviction for the Specification of Charge I, drunk on duty.

## II. DISCUSSION

### A. Providence of Guilty Plea

Appellant did not raise the issue of the providence of Appellant's plea to Specification 2 of Charge V, Conduct Unbecoming an Officer and Gentleman, in his assignments of error brief to the court. In response to this court's order to file briefs on the specified issue, Appellant argues now for the first time that the military judge abused his discretion by accepting his guilty plea to this offense.

#### 1. Additional Background

Before accepting Appellant's plea of guilty to this specification, the military judge conducted an inquiry with Appellant. He advised Appellant of the applicable elements of the offense as follows:

---

[4] The details of the conversation differ between Appellant's rendition during the guilty plea inquiry and MH's testimony at trial. Resolution of that discrepancy is unnecessary in our disposition of the case.

That between on or about 4 July 2020 and on or about 30 September 2020, at or near Royal Air Force Lakenheath, United Kingdom, on divers occasions, you did certain acts, to wit: were drunk in the presence of subordinate members of the 48th Medical Group, Royal Air Force Lakenheath, United Kingdom; and, two, that under the circumstances, your conduct was unbecoming an officer and a gentleman.

The military judge also provided relevant definitions. Regarding the definition of unbecoming, he instructed as follows:

Unbecoming means behavior more serious than slight and of a material and pronounced character. It means conduct morally unfitting and unworthy, rather than merely an opposite or unsuitable misbehavior, which is more than opposed to good taste or propriety . . . . Conduct unbecoming an officer and a gentleman means actions or behavior in an official capacity, which is dishonoring or disgracing the person as an officer, seriously compromises the officer's character as a gentleman, or action or behavior in an unofficial or private capacity, which in dishonoring or disgracing the officer personally, seriously compromises the person's standing as an officer. There are certain moral attributes common to the ideal officer and the perfect gentleman, a lack of which is indicated by acts of dishonesty, unfair dealing, indecency and decorum, lawlessness and justice [sic] or cruelty. Not everyone is, or can be, expected to meet unrealistically high moral standards, but there is a limited [sic] of tolerance based on customs of the service and military necessity, below which the personal standards of an officer, cadet or midshipman cannot fall without seriously compromising the person's standing as an officer, cadet or midshipman, or the person's character as a gentleman.

After he provided these definitions, the military judge noted that he took these definitions from *United States v. Miller*, 37 M.J. 133 (C.A.A.F. 1993), to which trial defense counsel responded, "Defense concurs, Your Honor." The military judge then asked Appellant to tell him why he was guilty of the offense. Appellant responded,

Yes, Your Honor. On or about the 4th of July, . . . our neighbors . . . hosted a party . . . . In the presence of members of the [medical group], I drank to excess and became drunk. I agree that this is conduct unbecoming of an officer. In addition, on or about 3 October 2020, my wife . . . hosted a girls' night with several members of my subordinates who are all female from my unit,

6

the [medical group]. At that time, I also drank to excess and became drunk in their presence. I also agree that this conduct is conduct unbecoming of an officer.

The military judge asked follow-up questions regarding how much Appellant had consumed and why he was drunk. Appellant responded that his intoxication level met the definition of drunk provided by the military judge. Additionally, he stated, "I felt psychomotor retardation. I don't think my speech was unintelligible, but it was not as crisp." He agreed with the military judge that he was slurring his words. He stated, "I wasn't stumbling, but my gait, my balance was impaired. That led me to believe that I was drunk."

Appellant provided some additional context for his drunkenness stating, "I also want to point out that my drunkenness was in the presence of members of my unit . . . and I think that my drunkenness was observed by them and I believe—I didn't ask them of course, but I believe, in their mind, they thought, 'Well, he's drunk.'" The military judge asked Appellant why he would believe that. Appellant responded, "As I look back, my memory is not as good as it could have been, of course, but their reactions to the way I was conducting myself led me to believe that they thought I was drunk."

The military judge asked Appellant to describe the circumstances of the event. Appellant stated,

> Yes, Your Honor. It was a 4th of July day weekend, which we typically have every year as members of the military. [Our neighbors and our family] decided to have a joint 4th of July weekend party, which we all agreed that it would last more than just the 4th of July. It really kicked off on the evening of the 3rd and went through the 5th or so. It was a long, kind of, drawn out social event. Drinking was involved. Members of the [medical group], my subordinates, were present and I drank enough to become drunk[,] and they witnessed it. I came to the conclusion that they witnessed it and thought I was drunk based on how they were reacting to my conduct physically and mentally; how I was talking, slurred speech or words and then my clumsy, physical behavior.

Appellant clarified that the subordinate members were senior enlisted members, and that there were "a minimum of two to a maximum of four" subordinate members at the event while he was drunk. He stated that "[a]t any given time, there were members of my unit . . . present around me[,] and I was interacting with them when I was drunk."

When the military judge asked Appellant, "why do you think that that was conduct unbecoming an officer and gentleman?" Appellant responded,

7

Yes, Your Honor. Being drunk in the presence of members, especially subordinate members, of my unit, the [medical group], who rely on my leadership, especially in the operating room, being drunk in their presence, in my mind, would degrade their confidence in me as a surgeon. It would seriously—for example, let's say I'm in the operating room and I made an error surgically and I got into major bleeding and I needed help really quick, I think perhaps, in their mind, they might think this guy is a bum. He can't operate. In that very example, it's simply that I didn't see a vessel. It was cut. There was bleeding. In their mind, because of their experience with me in the past, they might [think] otherwise and it could degrade their confidence in me as a surgeon.

When the military judge asked Appellant, "As a surgeon. What about an officer?" Appellant stated,

Yes, Your Honor, because I think that is important to elucidate because, by my behavior being conduct unbecoming, this hypothetical person may, sort of, copy their mental construct of me onto another officer and that would impact the officer corps, not just me. It's not just isolated to me. It might impact the other members—other commissioned officers of the [medical group] by my behavior.

When asked by the military judge whether the incident impacted him personally and whether it could impugn his honor, his integrity, and standing as an officer, Appellant responded in the affirmative.

Appellant also affirmed that being drunk in front of enlisted subordinate members of the unit was conduct morally unbefitting or unworthy for the reasons previously discussed. Appellant expanded further, stating,

Yes, for the same reasons, Your Honor; because as a senior commissioned officer, I understand why it is important that your conduct in all contexts in the presence of members of your unit— in the presence of the general public, not just members of my unit, but in this particular example, or case, my drunkenness in front of them degraded my standing as an officer in their eyes[,] of their image of who I am, what I should be as an officer[,] and me personally.

The military judge then proceeded to question Appellant regarding the incident on 3 October 2020. Appellant stated that it was a "girls' night" with Appellant's wife and members of the medical group, including a captain (O-3), a civilian subordinate, and a noncommissioned officer. Appellant described his

condition as drunk, elaborating that he was clumsy and his words may have been slurred. The military judge asked Appellant why he believed that his conduct was unbecoming an officer and a gentleman on that occasion. Appellant responded,

> I had [drunk] to a level that, in my mind, made me think I was drunk. I was in their presence. They either directly work with me or—for the example of this particular Captain whose name I cannot recall, she may have—many times in the past, she relieved . . . the civilian contracted operating—my personal civilian contracted operating room nurse so she could take a break. I would work with her. My being drunk in the presence of Sergeant First Class [M], who was my neurology technician, a member of the [medical group]; [JR] my operating room nurse, on the org[anizational] chart of the [medical group], civilian; and then Captain—at that time, I think maybe she was First Lieutenant, but this person I would have worked with and I have recollections of her relieving [JR] during a surgery case because surgery cases can last anywhere from 30 minutes to 4 to 6 hours. The nurses relieve each other. I would have worked with all three.
>
> . . . .
>
> Your Honor, I didn't mean to elaborate so much about my role as a surgeon, my operating room nurse and all this kind of information. In a nutshell, they were subordinates, they worked for me and, on this date, 3 October [2020], I was drunk and in their presence. I think they thought I was drunk. They know I am a Lieutenant Colonel—was and still am a Lieutenant Colonel in their presence on October 3rd. There was no doubt in their mind or mine about the situation.

Following this explanation, the military judge again asked, "I need you to tell me, on the 3 October [2020] occasion, why you think that your behavior was conduct unbecoming an officer and a gentleman." Appellant responded,

> Yes, Your Honor. On the evening of October 3rd[,] 2020, I was not acting in an official capacity. It was in a personal capacity. It was a social event. I was not invited to this event. I was present in my home. I was in the living room. They were having their get-together in the dining room. I would go in there occasionally and they would see me. In my mind, they thought I was drunk. They were members of the [medical group] at the time. This was not a minor deviation from what I would consider the standard of professional officership.

. . . .

> Because of that behavior, I can see how it could easily influence their idea of me, concept of me, and in the future, it may seriously compromise my ability as an officer, basically, to complete the mission.

Appellant then affirmed that this conduct may seriously compromise his standing as an officer. He affirmed that on both occasions that he believed the conduct would disgrace him personally. He affirmed that the conduct would bring dishonor to the military profession and that "the specification and the definitions to which [he] . . . pled guilty adequately capture[ ] [his] conduct that was morally unfitting or unworthy of being an officer." Finally, Appellant affirmed that his actions were serious misbehavior and that they were of such a nature, under the circumstances, to bring dishonor or disrepute upon the military profession which he represented.

Towards the conclusion of the guilty plea inquiry, the military judge asked counsel if they believed that further inquiry was necessary. Trial counsel requested and the military judge asked Appellant questions regarding the names of individuals present at the events. Following those questions, the military judge again asked counsel if any further inquiry was requested. Both trial counsel and trial defense counsel stated, "No, Your Honor." Trial defense counsel did not object to the military judge's acceptance of the guilty plea, did not argue that the plea was not provident, and did not request to withdraw the guilty plea.

**2. Law**

We review a military judge's decision to accept an accused's guilty plea for an abuse of discretion. *United States v. Riley*, 72 M.J. 115, 119 (C.A.A.F. 2013) (quoting *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008)). In determining whether a military judge abused his discretion, we apply the substantial basis test asking "whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding an appellant's guilty plea." *Inabinette*, 66 M.J. at 322.

"The military judge shall not accept a plea of guilty without making such inquiry of the accused as shall satisfy the military judge that there is a factual basis for the plea." R.C.M. 910(e). A military judge's failure to obtain an adequate factual basis for a guilty plea constitutes an abuse of discretion. *Inabinette*, 66 M.J. at 321. "[W]e afford military judges significant deference on this point and we grant them substantial leeway in conducting providence inquiries." *United States v. Moratalla*, 82 M.J. 1, 3 (C.A.A.F. 2021) (citing *United States v. Caldwell*, 72 M.J. 137, 144 (C.A.A.F. 2013); then citing *United States v. Price*, 76 M.J. 136, 139 (C.A.A.F. 2017)). "Nevertheless, a military judge

must elicit *actual facts* from an accused and not merely legal conclusions." *Id.* (internal quotation marks omitted) (quoting *Price*, 76 M.J. at 138).

"Even if a guilty plea is later determined to be improvident, a reviewing court may grant relief only if it finds that the military judge's error in accepting the plea 'materially prejudice[d] the substantial rights of the accused.'" *Id.* at 4 (quoting Article 45(c), UCMJ, 10 U.S.C. § 845(c)).

### 3. Analysis

Appellant argues that "[i]n a nutshell, [Appellant] was unable to articulate how his behavior, becoming drunk and nothing more, in an unofficial social setting rose to the 'serious' level required by the definition for conduct unbecoming an officer and gentleman." Appellee, conversely, argues that "[b]y drinking to excess in front of these subordinates and interacting with them in an obviously drunken state, Appellant acted with a lack of decorum that disgraced him personally and left questions about his professionalism as an officer (and medical professional)." The crux of the issue then is whether, under the particular circumstances of these two incidents, *as described by Appellant*, his conduct of being drunk in front of subordinates was unbecoming an officer and gentleman.

As a preliminary matter, a military judge must "ensure the accused provides an adequate factual basis to support the plea during the providence inquiry." *United States v. Timsuren*, 72 M.J. 823, 828 (A.F. Ct. Crim. App. 2013) (citing *United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969)). We cannot consider evidence presented in a subsequently litigated portion of the trial on separate but related offenses to bolster an inadequate guilty plea inquiry by the military judge. Evaluating this plea inquiry through the proper lens, we are convinced that the facts elicited from Appellant were insufficient to show that his conduct on these occasions was unbecoming. Thus, the military judge abused his discretion in accepting Appellant's guilty plea to this offense.

Appellant's statements reveal that both events were social gatherings which included unit members but were not official events. Appellant was not present in any official capacity at these events. There is no question that he consumed alcohol to excess and became drunk. That drunkenness was manifested through speech that was slurred or at least not as "crisp" as would have been normal for him, an O-5 surgeon. Appellant believed or thought that these manifestations may have caused his unit members to draw adverse conclusions about him. However, those assertions are speculative. We note on several occasions Appellant adopted statements presented by the military judge, providing blanket assertions that can be fairly described as mere legal conclusions rather than facts necessary to support them. While legal conclusions have some value, the key aspect of a plea inquiry is Appellant's provision of "actual facts"

that support his plea. *See Moratalla*, 82 M.J. at 3 (emphasis and citation omitted). For example, in relation to the October 2020 "Girls' Night" event hosted by his wife at their home, Appellant said his coworkers "would see" him and he assumed they thought he was drunk. But the military judge did not elicit from Appellant what conduct the women saw that would indicate Appellant was drunk and acting in an unbecoming manner under the circumstances. Similarly, in relation to the July event, Appellant referenced "how they were reacting to [his] conduct physically and mentally," without describing those reactions to his state of being drunk.

The military judge correctly instructed Appellant on the applicable law and appropriately recognized the difference between acting in an official capacity and acting in a personal capacity. He properly advised Appellant that conduct is unbecoming if the behavior, "in dishonoring or disgracing the officer personally, seriously compromises the person's standing as an officer." However, in Appellant's case, there are insufficient facts to support the conclusion that merely being drunk in the presence of the subordinates actually dishonored or disgraced Appellant by seriously compromising his standing as an officer. Appellee argues that this conduct shows a lack of decorum. The facts of this case—that Appellant's speech was slurred or not as crisp as normal and that his gait was imbalanced—do not demonstrate a lack of decorum sufficient to sustain a conviction for conduct unbecoming an officer.

In making this conclusion, we do not hold that being drunk in front of subordinates can never rise to the level of conduct unbecoming an officer and a gentleman. We only conclude that in this particular case, evaluating Appellant's statements to the military judge, the lack of facts raises a substantial question regarding Appellant's guilty plea to this offense. Recognizing that military judges have significant deference on this point and are granted substantial leeway in conducting providence inquiries, we cannot escape the conclusion that, based on the statements presented to him, the military judge here abused his discretion in accepting Appellant's guilty plea to this offense.

In this case, we conclude that the error in accepting the guilty plea materially prejudiced Appellant's substantial rights. Appellant was found guilty and sentenced for this conduct. In our decretal paragraph below, we dismiss the finding without prejudice. We discuss our resolution of the issue on the sentence below.

**B. Sentence Reassessment**

**1. Law**

When a finding of guilty is set aside, this court may authorize a rehearing on sentence or if we can, we may reassess the sentence. *United States v. Doss*, 57 M.J. 182, 185 (C.A.A.F. 2002) (citation omitted).

We have broad discretion first to decide whether to reassess a sentence, and then to arrive at a reassessed sentence. *United States v. Winckelmann*, 73 M.J. 11, 13 (C.A.A.F. 2013) (citing *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986)). In deciding whether to reassess a sentence or return a case for a rehearing, we consider the totality of the circumstances including the following factors: (1) "[d]ramatic changes in the penalty landscape and exposure;" (2) "[w]hether an appellant chose sentencing by members or a military judge alone;" (3) "[w]hether the nature of the remaining offenses capture[s] the gravamen of criminal conduct included within the original offenses and . . . whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses;" and (4) "[w]hether the remaining offenses are of the type that judges of the courts of criminal appeals should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial." *Id.* at 15–16 (citations omitted).

If we cannot determine that the sentence "would have been at least of a certain magnitude," we must order a rehearing. *United States v. Harris*, 53 M.J. 86, 88 (C.A.A.F. 2000) (citation omitted).

**2. Analysis**

Application of the *Winckelmann* factors convinces us that we can reassess the sentence. Setting aside the single conduct unbecoming specification does not change the penalty landscape significantly, let alone dramatically. For this offense Appellant faced a maximum confinement term of one year—a fraction of what he faced with the remaining offenses, including the sexual assault offense. Furthermore, due to the sexual assault conviction, the dismissal was a mandatory punishment. Appellant was sentenced pursuant to his request by a military judge alone, thus we know the exact length of the confinement term for this offense—one month. This term ran concurrently with the drunk on duty specification, the unlawful entry specification, and the other conduct unbecoming specification.

The offense we set aside, Specification 2 of Charge V, was not central to this case. The gravamen of the criminal conduct at issue was encompassed in the remaining specifications, not this drunk-in-front-of-subordinates offense. Those remaining offenses and the underlying evidence supporting them remain relevant for consideration of the sentence.

Finally, the remaining offenses are the type that we have extensive experience and familiarity with to reliably determine what sentence would have been imposed at trial. Considering all these factors, we are confident that without the set-aside finding, Appellant's sentence still would have included at least a term of confinement for 40 months (in the same segmented fashion the military

judge set forth beyond the set-aside offense) and a dismissal. We therefore reassess the sentence to reflect that sentence and disapprove the adjudged reprimand.

## C. Legal and Factual Sufficiency

### 1. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). "Our assessment of legal and factual sufficiency is limited to the evidence produced at trial." *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citation omitted).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (citation omitted). "[T]he term 'reasonable doubt' does not mean that the evidence must be free from any conflict . . . ." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (citation omitted). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). Thus, "[t]he standard for legal sufficiency involves a very low threshold to sustain a conviction." *King*, 78 M.J. at 221 (alteration in original) (citation omitted). Ultimately, this court's legal sufficiency analysis "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *United States v. Oliver*, 70 M.J. 64, 68 (C.A.A.F. 2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

For trials involving any convicted offenses committed before January 2021, "[t]he test for factual sufficiency is 'whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt.'" *Rodela*, 82 M.J. at 525 (third alteration in original) (quoting *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987) (construing the pre-January 2021 version of Article 66, UCMJ, 10 U.S.C. § 866). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (alteration in original) (quoting *Washington*, 57 M.J. at 399), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018).

Appellant was convicted of sexual assault without consent, in violation of Article 120, UCMJ, which required the Government to prove the following elements beyond a reasonable doubt: (1) that Appellant committed a sexual act upon MH by causing contact between his tongue and her vulva; and (2) that Appellant did so without MH's consent. *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 60.b.(2)(d).

Additionally, Appellant pleaded guilty by exceptions to conduct unbecoming an officer and gentleman, in violation of Article 133, UCMJ.[5] Appellant pleaded not guilty the remaining language and was convicted of that remaining language. This required the Government to prove the following elements beyond a reasonable doubt: (1) that Appellant did wrongfully and dishonorably commit a certain act, to wit: demand MH to remove her clothing, push her onto a couch, repeatedly demand her to hold open her labia, climb on top of her, and pin down her arms and legs with his arms; and (2) under the circumstances, this conduct was unbecoming an officer and gentleman. *MCM*, pt. IV, ¶ 90.b.

### 2. Analysis

Appellant challenges his convictions for sexual assault upon MH and conduct unbecoming an officer and gentleman arising from his pre-assault conduct on MH. He argues that MH's testimony had contradictions and inconsistent statements. He further argues that MH had a motive to misrepresent the facts in her testimony. Confusingly, Appellant appears to make these arguments to support not only a factual sufficiency challenge, but a legal sufficiency challenge.

Regarding the legal sufficiency standard, we note that we must view the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Robinson*, 77 M.J. at 297–98. Any contradictions, inconsistencies, or alleged motives referenced by Appellant, viewed through this lens illustrate that such a challenge is without merit.

Furthermore, Appellant's factual sufficiency challenge fails. Trial defense counsel comprehensively cross-examined MH. The court members were able to see MH and the other witnesses, including Appellant's wife, testify. It was well within their purview to believe some testimony and disregard other testimony. It is important that we heed our charge while conducting our review to make "allowances for not having personally observed the witnesses." *Rodela*, 82 M.J. at 525. We do so here. But we do not abdicate our responsibility to apply "neither a presumption of innocence nor a presumption of guilt to make our own

---

[5] Appellant pleaded guilty to the language he directed to MH during this encounter and to sucking and kissing her neck.

independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Wheeler*, 76 M.J. at 568 (alteration, quotation marks, and citation omitted). Reviewing MH's testimony in its entirety, we are convinced that MH's testimony was not contradictory to other statements she made or to the other evidence in any substantial way. We are also convinced that any inconsistencies that arose did not undermine her overall credible testimony. Regarding MH's alleged motive to fabricate, the evidence simply did not support that such a motive ever existed, let alone that it influenced her testimony or led her to lie to the court members.

Viewing the evidence in the light most favorable to the Government, we conclude the court members rationally found the essential elements of both the sexual assault and of the conduct unbecoming offense beyond a reasonable doubt. *See Robinson*, 77 M.J. at 297–98. Furthermore, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are ourselves convinced of Appellant's guilt of both offenses beyond a reasonable doubt. *See Rodela*, 82 M.J. at 525.

### D. Timeliness of Appellate Review

#### 1. Law

"[C]onvicted service members have a due process right to timely review and appeal of courts-martial convictions." *Moreno*, 63 M.J. at 135 (citing *United States v. Toohey*, 60 M.J. 100, 101 (C.A.A.F. 2004); *Diaz v. Judge Advocate General of the Navy*, 59 M.J. 34, 37–38 (C.A.A.F. 2003)). Whether an appellant has been deprived of his due process right to speedy post-trial and appellate review, and whether constitutional error is harmless beyond a reasonable doubt, are questions of law we review de novo. *United States v. Prasad*, 80 M.J. 23, 29 (C.A.A.F. 2020) (citation omitted); *United States v. Arriaga*, 70 M.J. 51, 56 (C.A.A.F. 2011) (citing *Moreno*, 63 M.J. at 135).

A presumption of unreasonable delay arises when appellate review is not completed, and a decision is not rendered within 18 months of the case being docketed. *Moreno*, 63 M.J. at 142. A presumptively unreasonable delay triggers an analysis of the four factors set forth in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (additional citations omitted). *Moreno* adopted three types of prejudice arising from post-trial processing delay: (1) oppressive incarceration; (2) anxiety and concern; and (3) impairment of a convicted person's grounds for appeal and ability to present a defense at a rehearing. *Id.* at 138–39 (citations omitted).

"We analyze each factor and make a determination as to whether that factor favors the Government or the appellant." *Id.* at 136 (citation omitted).

Then, we balance our analysis of the factors to determine whether a due process violation occurred. *Id.* (citing *Barker*, 407 U.S. at 533 ("Courts must still engage in a difficult and sensitive balancing process.")). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* (citation omitted). However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

A Court of Criminal Appeals may provide appropriate relief for excessive post-trial delay. Article 66(d)(2), UCMJ. Appropriate relief is not synonymous with meaningful relief. *United States v. Valentin-Andino*, __ M.J. __, No. 24-0208, 2025 CAAF LEXIS 248, at *7 (C.A.A.F. 31 Mar. 2025). "Although it is within a Court of Criminal Appeal's discretion to place its reasoning about Article 66(d)(2) relief on the record, it is not required to do so." *Id.* (citing *Winckelmann*, 73 M.J. at 16).

### 2. Procedural Background and Analysis

Appellant's case was docketed with the court on 3 August 2023. The delay in rendering this decision after 24 January 2024 is presumptively unreasonable. The reasons for the delay include: the time required to permit the parties to review the exceptionally large record of trial including a transcription of over 2,700 pages; the time required for Appellant to file his brief, which was filed with this court on 27 December 2024; the time required for the Government to file its answer on 27 January 2025; and the time required for both parties to file their briefs covering the specified issue on 24 February 2025.[6] Appellant has made no specific assertion of his right to timely appellate review, nor claimed prejudice on this issue, and we find none. Because we find no particularized prejudice, and the delay is not so egregious as to adversely affect the public's perception of the fairness and integrity of the military justice system, we likewise find no due process violation. *See Toohey*, 63 M.J. at 362.

We also conclude there is no basis for relief under Article 66(d)(2), UCMJ, in the absence of a due process violation. Considering all the facts and circumstances of Appellant's case, we decline to exercise our Article 66(d), UCMJ, 10 U.S.C. § 866(d), authority to grant relief for the delay in completing appellate review.

---

[6] Notably, Appellant filed for and was granted 14 enlargements of time permitting his civilian defense counsel a full opportunity to review the case and submit Appellant's brief.

### III. CONCLUSION

The finding of guilty for Specification 2 of Charge V is **SET ASIDE**, and in the interests of judicial economy, Specification 2 of Charge V is **DISMISSED WITHOUT PREJUDICE**. We affirm the remaining findings of guilty, and affirm only so much of the sentence as provides for confinement for 40 months and a dismissal, maintaining the same segments as listed by the military judge for the remaining findings. The remaining findings of guilty and the sentence, as reassessed, is correct in law and fact, and no additional error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the remaining findings and sentence, as reassessed, are **AFFIRMED.**



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court